UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03-CV-93-H

MAKER'S MARK DISTILLERY, INC.                                    PLAINTIFF

V.

DIAGEO NORTH AMERICA, INC., *et. al.*                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Defendants Tequila Cuervo La Rojena S.A. de C.V., Casa Cuervo S.A. de C.V., and Jose Cuervo International, Inc. (collectively " the Cuervo entities") have moved for partial summary judgment as to all of Plaintiff Maker's Mark Distillery, Inc.'s ("Maker's Mark") claims as well as to their counterclaim for cancellation of Maker's Mark's trademark registration.  The Court has discussed the issues with counsel.  The Court is familiar with this case and the answers to the issues seem at this point and after considerable review, to be rather clear.  The Court ultimately concludes that there are too many unanswered questions on key factual issues.  Therefore, the Court will deny the Cuervo entities' motions at this time.

I.

The facts of this case are set forth in a previous opinion, making only a brief recitation necessary here.  *See Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 2007 WL 4292392 (W.D. Ky. Dec. 6, 2007).  Certain basic facts are not in dispute.

Maker's Mark has held a federally registered trademark issued by the United States Patent and Trademark Office (PTO) since 1985 consisting of the "wax-like coating covering the

cap of the bottle and trickling down the neck of the bottle in a freeform irregular pattern."
Maker's Maker does not claim a trademark to the general use of wax seals. This trademark later
became "incontestable" pursuant to 15 U.S.C. § 1065. From around 2001 until mid-2004, the
Cuervo entities' co-defendant, Diageo North America, marketed a tequila product, "Jose Cuervo
Reserva de La Familia," which bore a freeform wax-like seal cap. The Cuervo entities
abandoned use of the freeform wax-like seal following Maker's Mark's initiation of the instant
lawsuit in 2003[1] which alleges that use of a freeform wax-like seal on a tequila product infringes
on and dilutes Maker's Mark's incontestable federally registered trademark.

## II.

Discovery in this case is not complete. Nonetheless, the Cuervo entities have moved for
summary judgment which is proper "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.
CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the
absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
The moving party's burden may be discharged by demonstrating that there is an absence of
evidence to support an essential element of the nonmoving party's case for which he or she has
the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden
passes to the nonmoving party to establish, after an *adequate opportunity for discovery*, the
existence of a disputed factual element essential to his case with respect to which he bears the

---

[1]The Cuervo entities were joined as defendants in 2007.

2

burden of proof. *Id.* (emphasis added). If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Maker's Mark alleges trademark infringement, false designations, descriptions, and representations, and federal dilution arising under the Lanham Act as well as common law trademark infringement and unfair competition.  15 U.S.C. §§ 1114(a); 1125(a); 1125(c).  The Cuervo entities argue that a freeform wax-like coating cannot comprise a valid trademark and counterclaim, asking this Court to cancel Maker's Mark's trademark registration pursuant to 15 U.S.C. §§ 1052(e)(5), 1119 on the grounds that the freeform wax-like coating is either functional or generic.  Maker's Mark cannot prevail on its claims if the Cuervo entities are correct in their assertion that Maker's Mark's trademark is invalid.  Thus, the question now before the Court is whether any genuine issue of material fact precludes a finding that Maker's Mark's incontestable trademark registration is subject to cancellation because the freeform wax-like coating is functional or generic.

III.

The design of a product, as well as its packaging, both part of its "trade dress," may form the basis of protection under the Lanham Act.  This is so whether or not the trade dress has been registered as a trademark on the principal register.  *Fuji Kogyo Co. v. Pacific Bay Int'l., Inc.*,

461 F.3d 675, 683 (6th Cir. 2006)(citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S.

205, 209-10 (2000)); 15 U.S.C. § 1125(a)(3).   The Sixth Circuit recognizes trademark and trade

dress infringement as "separate and distinct causes of action under the Lanham Act." *Gen.*

*Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2006); *Gibson Guitar Corp. v.*

*Paul Reed Smith Guitars, LP*, 423 F.3d 539, 547 (6th Cir. 2004).   The Lanham Act defines a

trademark as "any word, name, symbol, or device, or any combination thereof" which is used by

a person "in commerce . . . to identify and distinguish his or her goods, including a unique

product, from those manufactured or sold by others to indicate the source of the goods, even if

that source is unknown." *Gibson Guitar*, 423 F.3d at 547; 15 U.S.C. § 1127.   Though the

Lanham Act does not explicitly define trade dress, the Supreme Court has characterized it as the

"design or packaging of a product" which has acquired a "secondary meaning" sufficient "to

identify the product with its manufacturer or source." *TrafFix Devices, Inc. v. Mktg. Displays,*

*Inc.*, 532 U.S. 23, 28 (2001).

      In trademark law, if a product's packaging is functional, the design or packaging cannot

serve as a trademark. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995); 15 U.S.C.

§ 1052(e)(5)(an item shall be refused registration on the principal register if it "comprises any

matter that, as a whole, is functional.").   However, when the PTO is satisfied that the "packaging

of a product" comprising trade dress also satisfies the federal standards of trademark protection,

it may approve the trademark for placement on the principal register.  *See, e.g., Qualitex Co. v.*

*Jacobson Prods. Co.*, 514 U.S. 159 (1995)(green/gold color of a dry cleaning press pad); *Gibson*

*Guitar Corp.*, 423 F.3d 539 (two-dimensional silhouette of guitar's body shape).  This path from

trade dress to registered trademark is precisely the path Maker's Mark has followed.  Since 1985

4

it has held the federally registered trademark for the "wax-like coating covering the cap of the bottle and trickling down the neck of the bottle in a freeform irregular pattern," as part of the whisky packaging or trade dress.  This is significant because a party seeking to recover for *infringement* of a registered trademark is entitled to a presumption that the trademark is valid. *See Fuji Kogyo*, 461 F.3d at 684.

Thus, the Court will apply the statutory presumptions indicated under the Lanham Act for registered trademarks.  This is appropriate because the claims are pled as trademark infringement claims (as opposed to claims for unregistered trade dress infringement).[2]  Here, the challenged trademark is registered and "incontestable" pursuant to 15 U.S.C. § 1065.  A registered mark becomes incontestable under §1065 after continuous use for five consecutive years subsequent to the date of registration, provided the registrant files an affidavit setting forth the continuous use and testifying to the lack of any adverse or pending proceeding to the registrant's right of the mark.  *Id.*  Once a mark is "incontestable," its registration constitutes "conclusive evidence of the validity of the registered mark," except as to certain statutorily enumerated challenges, including the functionality of the mark.  15 U.S.C. §1115(b)(8).[3]

The mark's status does not bar a challenge that it is either generic or functional.  But it does create a presumption of validity, which the challenger bears the burden of rebutting.  *See Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 405 (6th Cir. 2002); *Fuji Kogyo Co.,*

---

[2]  In a 1999 amendment to Lanham Act § 43(a), Congress added a paragraph placing the burden of proving non-functionality on the plaintiff in the case of *unregistered* trade dress.  However, as here,  if trade dress satisfies the federal standards of trademark protection, then it is registerable.

[3]"Before a mark achieves incontestable status, registration provides prima facie evidence of the registrant's exclusive right to use the mark in commerce."  *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985)(citations omitted).

5

461 F.3d at 683; 15 U.S.C. § 1115(a)(a registered mark is "prima facie evidence of the validity of the registrant's . . . exclusive right to use . . .") . To carry their burden on summary judgment, the Cuervo entities must produce undisputed evidence of either functionality or genericness sufficient to overcome the statutory presumption of validity. *See id.*  If successful on either issue, Maker's Mark's trademark would be cancelled.  Therefore, the Court must consider each.

IV.

First, the Cuervo entities argue that the free-form wax coating is functional.  In this case, the Cuervo entities present evidence that a freeform wax coating protects the cork from air, moisture, and contaminants and preserves the contents of the bottle on *some* bottles of alcohol and that tendrils are a natural byproduct of such a coating.[4]  But Maker's Mark contends that on its product a patented air and liquid-tight twist cap, and not the registered trademark freeform wax coating, protects and preserves its product.  These pieces of evidence present the question of whether a trademark could be invalid on functionality grounds not because it performs a useful purpose on the trademark owner's product, but because it prevents a competitor from using the same feature in a useful way on the competitive product.  This is an unusual puzzle because in most cases the challenged trademark serves the same purpose on any product.  The Court looks to precedent trademark cases for guidance and finds that the language therein suggests that the Court must consider not only how Maker's Mark uses the trademark features, but also how competitors would use it absent Maker's Mark's assertion of its trademark rights.  As the Supreme Court has explained, "The functionality doctrine prevents trademark law, which seeks

---

[4]The record does not disclose the precise sealant mechanism on the Cuervo entities' product or the purpose for which it might use a wax seal.

to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex*, 514 U.S. at 164. Thus, it is fair to consider the usefulness not only to the trademark owner, but also to would-be competitors. Indeed a strange result would follow if a trademark owner could control a competitively "useful product feature" for competitors simply because on its own product other technology rendered the feature superfluous, decorative, or ornamental. *Cf. Valu Eng'g, Inc. v. Rexnord Corp.,* 278 F.3d 1268, 1277 (Fed. Cir. 2002)(noting the "important policy underlying the functionality doctrine is the preservation of competition" and noting the Board's task is to "assess the effect registration of a mark would have on competition.").

"In general terms, a product feature is functional if it is essential to the use or purposes of the article or if it affects the cost or quality of the article." *Inwood Labs, Inc. v. Ives Labs, Inc.,* 456 U.S. 844, n.10 (1982); *TrafFix*, 532 U.S. 23, 32 (2001)(applying *Inwood* formulation to assess functionality of a road sign stabilization). The Cuervo entities say Maker's Mark's registered trademark is functional under *Inwood* because "a freeform wax seal is essential to others making such wax seals for use on their bottles which serves a functional purpose and the resulting tendrils that form are not a [sic] arbitrary flourish but only a natural byproduct of making such a seal." Defs.' Mot. for Partial Summ J. 18. In addition, the Cuervo entities assert that "preventing or removing the tendrils when applying wax seals affects both the cost and quality of the wax seal" by requiring extra effort to delete the tendrils and reducing the "vintage and upscale appearance" of the bottles. *Id.* at 17-18.

"Functionality in a trademark case is a factual determination reviewed only for clear error." *Fuji Kogyo*, 461 F.3d at 681 (citing *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1246 (6th

Cir. 1991).[5]  Recently, the Sixth Circuit has had occasion to review a district court's cancellation

of a federally registered trademark in the shape of fishing rod lines on functionality grounds.

*Fuji Kogyo*, 461 F.3d 675.  In that case, the district court found that the shape of the fishing rod

lines was functional and cancelled the trademark registration following a bench trial that

included the testimony of expert and lay witnesses.  *Id.* at 684.  In reviewing the district court's

decision, Judge Boggs noted the Federal Circuit's "helpful doctrine" of *de jure* versus *de facto*

functionality in assessing claims that a trademark is functional:

> Our decisions distinguish *de facto* functional features, which may be entitled to
> trademark protection, from *de jure* functional features, which are not.  "In essence, *de
> facto* functional means that the design of a product has a function, i.e., a bottle of any
> design holds fluid."  *De facto* functionality does not necessarily defeat registrability.  *De
> jure* functionality means that the product has a particular shape "because it works better
> in this shape."

*Fuji Kogyo*, 461 F.3d. at 685 (quoting *Valu Eng'g, Inc.,* 278 F.3d at 1274 (Fed. Cir. 2002)

(citations omitted)(italics added).

In reviewing the *Fuji Kogyo* district court's conclusions on functionality, the Sixth

Circuit noted that the district court had adopted the *Morton-Norwich* test, which considers: (1)

the existence of a utility patent disclosing the utilitarian advantages of the design; (2) advertising

materials in which the originator of the design touts the design's utilitarian advantages; (3) the

availability to competitors of functionally equivalent designs; and (4) facts indicating that the

design results in a comparatively simple or cheap method of manufacturing the product.  *Fuji*

---

[5]*See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 7:73 *Evidence
Relevant to the Functionality Issue* (4th ed.; Vol. 1 2008) (noting, "[e]ach case of alleged functionality will present a
unique set of facts not easily disposed of either by sweeping generalities or precise legal rules.  So long as the proper
question is asked, the result will flow from a careful weighing of the evidence relevant to whether or not the disputed
design feature is dictated by utilitarian purposes.").

*Kogyo*, 461 F.3d at 685 (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41
(C.C.P.A. 1982)).  After reviewing the application of these four factors, the Sixth Circuit
affirmed the district court's holding that "'the curved legs of Fuji's four line guides are wholly
functional and thus are not entitled to trademark protection . . . with aesthetics being a
byproduct' of that function." *Id.* at 681.[6]

 This Court is keenly aware that in *TrafFix*, the Supreme Court held that " If a design is
functional, there is no need to further consider competitive necessity"  532 U.S. at 31 and that
the third and fourth *Morton-Norwich* factors consider alternative design and cost of
manufacturing.  The Sixth Circuit has yet to definitively resolve whether evidence of alternative
designs has a place outside the competitive necessity test.  *See Antioch Co. v. W. Trimming
Corp.*, 347 F.3d 150, 156 (6th Cir. 2003).  In *Antioch*, the Circuit noted:

> Since the Supreme Court decided *TrafFix Devices*, however, at least one circuit and a
> leading treatise author have expressed their views that the availability of alternative
> designs may be helpful in applying the traditional *Inwood* test for functionality.  *See Valu
> Eng'g, Inc.,* 278 F.3d at 1276 (commenting that the availability of alternative designs can
> be 'a legitimate source of evidence to determine whether a feature is functional in the
> first place;) 1 McCarthy, §7:75 (stating his personal view that evidence of alternative
> designs can be useful in evaluating whether the design 'is essential to the use or purpose
> of the article.'

*Id.*  Acknowledging that "a court is not *required* to examine alternative designs when applying
the traditional test for functionality," *id.*, this Court is persuaded that the *Morton-Norwich* factors
provide a helpful framework to evaluate the evidence regarding the functionality of a freeform
wax coating in the first place.  Indeed, Judge Boggs' more recent application of the *Morton-
Norwich* factors in *Fuji Kogyo* indicates to do so is not error in this Circuit.  *See* 461 F.3d at 685.

---

[6]Notably, the district court reached this conclusion, not by application of statutory presumptions or on
summary judgment, but following a bench trial with the presentation of expert testimony.  *Id.*

At this point in the litigation, some factors appear to favor a finding of non-functionality, and there is simply inadequate evidence to evaluate other of the factors.  The first factor favors Maker's Mark, since there is no evidence of a utility patent disclosing the utilitarian advantages of the challenged mark.  With respect to the second factor, prior to discovery, there is no evidence that Maker's Mark has ever touted its trademark wax coating as having a utilitarian advantage.  Of course, this conclusion could change based on information that comes to light during discovery.  The third and fourth factors depend on what, if any *de jure* purpose or function the wax coating performs.  If the evidence shows that the only "function" is compliance with the tamper-proof federal regulation, Cuervo would have a difficult time proving that any number of other designs or materials could not perform this "function" equally well.  Indeed, such a purpose may be merely *de facto* functional which does not necessarily defeat registrability.  *See Valu Eng'g, Inc.,* 278 F.3d at 1274 (noting that "a bottle of any design holds fluid.").

Likewise, almost any packaging, regardless of its shape and design could provide a tamper-evident seal. And given the variety of alternative ways of complying with the tamper-proof requirement, it seems unlikely that the evidence would show that wax coating with tendrils is a "comparatively simple, cheap or superior method" of accomplishing this purpose. *Fuji Kogyo*, 461 F.3d at 685 (citing *Morton-Norwich*, 671 F.2d at 1341).   On the other hand, if the evidence demonstrates that the wax coating with tendrils actually protects the liquor contained in Cuervo's product, there may well be fewer alternative designs available to accomplish this purpose.  In this case, the Court would consider the extent to which removing the tendrils (an undisputedly non-functional aspect of the mark as a whole) renders wax sealing a more

complicated, expensive, and inferior method of preserving a liquor product. At this point, the parties genuinely dispute whether a wax seal with tendrils renders applying a wax coating more or less expensive. *Compare* Maker's Mark's Smith Decl. ¶¶ 8-9 *with* Cuervo entities' Nathan-Maiseter Decl. ¶20.

Cuervo has made a vigorous legal argument which leaves this Court unpersuaded. There are simply too many unknown or disputed facts concerning how each party uses and applies wax seals and the reasons for the use of wax seals. The ultimate trier of fact will benefit from weighing and evaluating all the evidence after an adequate time for discovery. At this stage without a fully developed discovery record, the Court is a long way from concluding that a preponderance of the evidence will demonstrate that the challenged mark is legally functional. For this reason, the Court will deny the Cuervo entities' motion for partial summary judgment on functionality grounds.

V.

Next, the Cuervo entities argue that Maker's Mark's registered trademark is generic. A registered trademark that has become generic may be cancelled at any time. Common product shapes can also be classified as "generic" and hence incapable of trade dress protection. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002)("This reasoning applies equally well to generic product configurations, for no designer should have a monopoly on designs regarded by the public as the basic form of a particular item); *Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322 (Fed. Cir. 1999)("[T]he term 'generic name' as used in [Lanham Act § 14(3)] must be read expansively to encompass

anything that has the potential but fails to serve as an indicator of source, such as names, words, symbols, devices or trade dress.").

As with functionality, federal registration constitutes a presumption that the feature is not generic and the challenger bears the burden of overcoming this presumption. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007). "The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3). The Cuervo entities' argue strenuously that freeform wax seals "have been used on alcoholic beverage bottles since the 1700s until the present." Defs.' Mot. for Partial Summ. J. 21. True though this may be, the Court agrees with Maker's Mark that the statutory language indicates that the inquiry as to genericness focuses not on the history of freeform wax seals, but rather on the "primary significance" that the "relevant public" attaches to freeform wax seals. The "relevant public" here is contemporary consumers, not spirits manufacturers from other eras.

More importantly, genericness, like functionality, is a question of fact. *See Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996). It seems premature to speculate about the significance of free-form wax seals to the relevant public. In many cases where genericness is at issue, a party provides the court with a consumer survey, which one district court characterized as "preferable to attorneys, litigants and judges merely arguing and extrapolating from their own personal perceptions." *Pepper Patch, Inc. v. Bell Buckle Country Store*, 2006 WL 2037560 (M.D. Tenn. Jul. 18, 2006)(citation omitted). Even where no party offers a customer survey, courts resolving the genericness inquiry on summary

judgment often have the benefit of testimony from the relevant public. *See, e.g., Nartron Corp.*, 305 F.3d 397 (evaluating "undisputed deposition testimony from third-party participants in the semiconductor industry, including manufacturers and distributors . . .[and] testimony from customers, suppliers, vendors").

In sum, disputed material facts as to the genericness of the challenged mark preclude the Court from deciding that issue at this time.  Though the Cuervo entities have produced many photographic examples of alcoholic beverages bearing a freeform wax-seal as well as an affidavit of Mr. David Nathan-Maister, a "collector of rare wines and spirits" based in the United Kingdom, this evidence is insufficient to glean the "primary significance" to the "relevant public."  As with functionality, only with a more fully-developed factual record will the trier of fact be equipped to evaluate evidence and determine if the Cuervo entities rebut the statutory presumption that Maker's Mark's federal registration is non-generic.

VI.

Having denied Cuervo's motions to dismiss, the Court assumes that this Court will resolve this case now upon a law and fact trial which addresses issues of functionality, genericness and trademark violation, such as confusion.  The Court does not intend to address these issues further until trial.

The parties should meet and jointly propose a discovery schedule which allows everyone to prepare for trial.  The schedule should include a time frame for trial dates.  Upon receiving the suggested schedule, the Court will schedule a brief conference to set a trial date.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Cuervo entities' partial motion for summary

13

judgment is DENIED.  All other motions are MOOT.  This is NOT a final order.

IT IS HEREBY ORDERED that on or before **October 2, 2008**, the parties shall submit a proposed discovery schedule.

cc:      Counsel of Record

14